BUCK *et al. v.* POST *et al.*, Dock Commissioners.

*(Circuit Court, S. D. New York. July 5, 1889.)*

WHARVES—DOCKS.

> In 1819 the common council of New York city authorized the owner of a sunken crib-dock to rebuild it, and "to add thereto one block and one bridge." A map made in 1828 showed the dock rebuilt and largely extended, the whole consisting of three sections, and complainants' expert testified that the extension was a bridge, *i. e.*, a pier built on piles. Defendants' expert testified that there were traces of an addition, consisting of a bridge connecting the original crib with another, which corresponded with the map. *Held*, that there was no authority in 1843 to build a broad platform on piles, which was not a "block," and could only be a "bridge."

In Equity. On bill for injunction.

*Solon P. Rothschild* and *John M. Bowers*, for complainants.

*F. A. Irish, Wm. H. Clark*, and *Thomas P. Wickes*, for defendants.

BROWN, J. The complainants seek to enjoin the dock department of this city from a threatened destruction of a platform landing adjoining the southerly side of pier 24, and connecting that pier with the West Washington market. The platform is built on piles, and is several rods in length and breadth, occupying a considerable part of the slip in front of and out from the bulk-head to the south of pier 24. Unless the complainants prove that they have some vested property right in the platform by grant from the corporation, the defendants have a right to remove the structure; since any mere license to occupy, or acquiescence in occupation, has been terminated. The special grounds stated by the department for requiring the removal of the structure now have reference to the public health, which is alleged to be imperiled by the great accumulations of sewage filth beneath the structure. The complainants offer to do anything required to cleanse the premises, and claim that the alleged cause is but a pretext for interference with their right of occupation. I do not consider that branch of the case, however, since, whatever the reasons for interference may be, the complainants have no right to an injunction unless there is at least probable ground for their claim of a property right in the premises. If they have not, then their occupancy is an invasion of the public rights of dockage and wharfage facilities within that slip. The plaintiffs' only claim of right rests upon a resolution of the common council, in 1819, as a part of a contract made with Joshua Jones, (who was then owner of a sunken crib-dock, or "block," forming the base of the present pier 24,) whereby the common council authorized him "to rebuild the aforesaid sunken block, and to add thereto one block and one bridge." An accurate map of 1828 shows that dock at that time largely extended, and its previous connection with the old corporation dock at the foot of Vesey street gone. About 1843 the platform was built, which the complainants allege was the "bridge" authorized by the resolution of 1819. The defendants contend that the structure built prior to the map of 1828, as an extension of the sunken

crib or block rebuilt, forming altogether a pier of about 140 feet in length, exhausted the authority of the resolution and contract of 1819. On a partial hearing of this matter on the 8th of June it appeared to me that the complainants did not make out their title as alleged; but, considering the importance of the question, and in order to avoid any possible injustice to the complainant, a reference was ordered to Commissioner Lyman to take further proofs in regard to the nature of the structure in question and the meaning of the above-quoted terms in the resolution of the common council. Careful and repeated examination of the testimony confirms the impression of the previous hearing, and satisfies me entirely that the structure in question was not authorized by the resolution and contract between Jones and the common council; that the "platform" is not a "bridge," within the meaning and intent of that resolution; and that it was not built nor designed as a bridge, but for different uses. The complainants' expert, through his whole examination, testifies that the extension of pier 24 beyond the rebuilt crib or "block" (the terms meaning the same thing) is a bridge; that is, in his sense of the term "bridge," viz., a pier built upon piles. If that opinion is sound, then the building of the extension of the original crib or block to some 90 or 100 feet additional during the 9 years following the resolution of 1819 plainly exhausted the authority to "add a bridge thereto;" and only the power to add "one other block," that is, crib, remained; and the platform built in 1843 is certainly not a crib or "block." The defendants' expert, however, testifies that there are clear traces of an addition to the rebuilt sunken dock, consisting of two parts, namely, another crib or block at the western extremity of the pier, and an intervening "bridge" of 66 feet in length, connecting the two cribs or "blocks." This corresponds precisely with the three divisions of the extended pier, as shown by the map of 1828, and with the length of the different sections of the pier as there marked in figures. This work was done some time between 1819 and 1828, and imports a full use of the grant or privilege contained in the contract of 1819. This map of itself affords very strong presumptive evidence of the facts. But the evidence of both experts, although they differ in some points, makes it impossible to find room for any authority for building the broad platform in question, which was erected in 1843. As I do not entertain any doubt about the matter, and there appears to me no probability that the complainants could succeed in establishing a title, I ought not to continue the injunction, which is therefore dissolved.